UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINCOLNWAY COMMUNITY BANK, ) | |
| ) | |
| Plaintiff, ) | No. 11-CV-5907 |
| ) | |
| v. ) | |
| ) | Judge Edmond E. Chang |
| ALLIANZ LIFE INSURANCE ) | |
| COMPANY OF NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff LincolnWay Community Bank seeks a declaration that the life insurance policy it holds with Defendant Allianz Life Insurance Company of North America is valid. R. 20, Am. Compl.[1] If it is not valid, then LincolnWay wants restitution of the premiums paid to and accepted by Allianz on the policy. *Id.* Allianz moves to dismiss the amended complaint, contending that the policy is a stranger-originated life insurance (STOLI) policy, and therefore is against Illinois public policy,

---

[1] Citations to the docket are indicated by "R." followed by the docket entry. This Court has subject matter jurisdiction under 28 U.S.C. § 1332. Specifically, Plaintiff LincolnWay is a citizen of Illinois because it is organized under Illinois law and maintains its principal place of business here. R. 20, Am. Compl. ¶ 2. Defendant Allianz is a citizen of Minnesota because it is incorporated under Minnesota law and maintains its principal place of business there. R. 16, Joint Initial Status Report ¶ 1b. The amount-in-controversy requirement is satisfied because one form of relief the amended complaint seeks is a declaration that the life insurance policy at issue is valid, Am. Compl. ¶¶ 41–48, and the policy is worth more than $75,000, *see id.* ¶¶ 34, 57 (comparing the policy at issue to a "much smaller" policy worth $1,000,000). Therefore it is not "legally impossible" that the value of the lawsuit to LincolnWay is worth more than $75,000. *Back Doctors Ltd. v. Metropolitan Property and Cas. Ins.*, 637 F.3d 827, 829–30 (7th Cir. 2011) (re-emphasizing that amount-in-controversy requirement is satisfied unless it is "legally impossible" for plaintiff to recover that amount).

unlawful, and void at its inception. For the following reasons, Allianz's motion is denied.

I.

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in LincolnWay's favor. *Ashcroft v. al-Kidd*, ⎯⎯ U.S. ⎯⎯, 131 S.Ct. 2074, 2079 (2011). Plaintiff LincolnWay is a community bank located in New Lenox, Illinois. Am. Compl. ¶ 2. Defendant Allianz is a life insurance company with its principal place of business in Minneapolis, Minnesota. R. 16, Joint Initial Status Report ¶ 1b. The life insurance policy in dispute was issued by Allianz in 2008 and ended up in LincolnWay's hands, about a year and a half later, when it was transferred to LincolnWay as collateral on a defaulted loan.

To start at the beginning, in January 2008, Scott Veselik—an insurance agent for Allianz—applied for a life insurance policy (the Policy or the Veselik Policy) on the life of his own father, Raymond Veselik. R. 20, Am. Compl. ¶¶ 9, 12. On the application, Scott Veselik listed himself as the owner and payor of the Policy and his mother, Judith Veselik, as the beneficiary. *Id.* ¶ 12. Around the same time that Scott Veselik applied for the Policy, a man named William Passero approached LincolnWay to apply for a loan to be used to purchase life insurance policies from those policies' original owners. *Id.* ¶ 8. In the process of applying for the loan, Passero brought Scott Veselik to one of his meetings with LincolnWay. *Id.* ¶¶ 11,12. At that meeting, Passero and Scott Veselik discussed with LincolnWay how the loan funds would be used with

respect to the Policy, but they did not show LincolnWay the application for the Policy. *Id.* ¶¶ 11, 16.

Not long after, on March 14, 2008, Scott Veselik paid the initial premium of $210,900 on the Policy and the Policy was officially approved and issued by Allianz four days later (on March 18). *Id.* ¶¶ 14, 17. Meanwhile, on March 17, having been approved for a $242,000 business loan from LincolnWay, Passero instructed the bank to direct $210,900 in loan proceeds to be paid to Scott Veselik. *Id.* ¶ 15. Also on March 17, Passero "assigned" the Policy to LincolnWay as collateral for the loan. *Id.* ¶ 20. At the time the assignment was executed, however, LincolnWay alleges that the bank knew Scott Veselik was still the owner of the Policy, and that it was up to Scott Veselik whether and when to transfer to the policy to Passero. *Id.* ¶ 20.

Scott Veselik did transfer ownership of the Policy to Passero on December 22, 2008, but he did not change the designation of Judith Veselik as the beneficiary on the policy at that time. *Id.* ¶ 21. About a month later, Allianz acknowledged and recorded that LincolnWay had an interest in the Policy as collateral on Passero's business loan. *Id.* ¶ 22. Then in late 2009 and early 2010, Passero ran into financial difficulties, and on July 30, 2010, Passero transferred the Veselik Policy (as well as another policy—the Scelsi Policy) to LincolnWay as part of a settlement with LincolnWay over a number of defaulted loans. *Id.* ¶¶ 23, 25–27. Allianz confirmed LincolnWay's ownership of these two policies, and following the death of the insured on the Scelsi Policy, paid the death benefit amount on that policy to LincolnWay. *Id.* ¶¶ 29, 34. But Allianz's investigation of the Scelsi policy caused LincolnWay to grow concerned that Allianz might not honor

3

the Veselik Policy. *Id.* ¶ 35. Allianz continued to accept premium payments on the Policy from LincolnWay, but refused to provide assurances that Allianz still considered the policy valid. *Id.* ¶ 36.

In August 2011, LincolnWay brought suit against Allianz, seeking a declaration that the Veselik policy is valid. R. 1, Compl. On July 16, 2012, LincolnWay filed an amended complaint, which added an alternative unjust-enrichment claim (if the Policy is found to be void) seeking restitution of the premiums that LincolnWay has paid. Am. Compl. ¶¶ 49-60. Allianz moves to dismiss LincolnWay's claim for declaratory relief for lack of standing and for failure to state a claim, and to dismiss the claim for restitution for failure to state a claim. R. 27, Mot. to Dismiss.

## II.

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move for dismissal of a claim where there is a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion under 12(b)(1) can also seek to dismiss a claim for lack of standing. *See Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). "In ruling on a motion to dismiss for want of standing, the Court must accept as true all material allegations of the complaint," drawing reasonable inferences in the plaintiff's favor. *Id.*; *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing the required elements of standing. *Lee*, 330 F.3d at 468.

The question of standing is jurisdictional in nature, and addresses "whether the litigant is entitled to have the court decide the merits of the dispute or particular

issues." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (internal quotation mark omitted)). There are both constitutional and prudential limitations on the jurisdiction of federal courts. *Warth*, 422 U.S. at 498. Under Article III of the Constitution, federal-court jurisdiction is limited to claims presenting a case or controversy between the plaintiff and the defendant. *Id.* In order to establish constitutional standing, the party invoking federal jurisdiction must demonstrate a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Even if constitutional standing is established, however, there are also prudential limitations to a federal court's exercise of jurisdiction. *FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988). Prudential standing requires plaintiffs to assert their own legal rights and interests, and not rest their claims on the legal rights or interests of third parties. *Warth*, 422 U.S. at 499. The latter requirement is similar to the requirement of Federal Rule of Civil Procedure 17 that every action must be prosecuted in the name of the real party in interest. *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 756 (7th Cir. 2008).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of

5

the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal,* 556 U.S. at 679.

### III.

Allianz argues for dismissal of LincolnWay's claim for declaratory relief under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), while it moves to dismiss LincolnWay's alternative claim for restitution only under Rule 12(b)(6). First up is the declaratory-relief claim, and then the unjust enrichment claim.

### A.

LincolnWay's amended complaint seeks a declaration that the Policy is valid. Am. Compl. ¶¶ 41-48. Allianz argues that this claim should be dismissed on two grounds, but both its arguments are premised on the claim that, on the face of the amended complaint, the Policy is not enforceable because it is contrary to public policy. Specifically, Allianz argues that the Policy is a "stranger originated life insurance" scheme (commonly referred to as a "STOLI" scheme). It makes sense to start with a brief overview of the law related to STOLI schemes.

6

In Illinois,[2] "the procurer of an insurance policy on the life of another must have an insurable interest in the other's life." *Bajwa v. Metro. Life Ins. Co.*, 776 N.E.2d 609, 617 (Ill. App. Ct. 2002). Illinois treats a life insurance contract that was procured by someone without an interest in the life of the insured as a wagering contract. *Dresen v. Metropolitan Life Ins.*, 195 Ill. App. 292, 293 (Ill. App. Ct. 1915). Such contracts create "a sinister counter interest" in having the life of the insured come to an end. *Bajwa*, 776 N.E.2d at 617 (citing *Grigsby v. Russell*, 222 U.S. 149, 154–55 (1911)). Accordingly, STOLI contracts, as they have come to be called, are considered illegal and void from their inception. *Ill. State Bar Ass'n Mut. Ins. v. Coregis Ins.*, 821 N.E.2d 706, 712 (Ill. App. Ct. 2004) ("[I]f the subject matter of a contract is illegal, that contract is void *ab initio*."). A contract that is void from inception must be treated as though it never existed; no provision can be enforced. *In re Marriage of Newton*, 955 N.E.2d 572, 585 (Ill. App. Ct. 2011).

Here, Allianz argues that it is clear on the face of the complaint that William Passero "orchestrated" the purchase of the Policy where he had no insurable interest in the life of the insured, Raymond Veselik. R. 151, Def.'s Br. at 2. Allianz argues that

---

[2] Neither LincolnWay nor Allianz explains why Illinois law should apply in this diversity case. For example, the amended complaint does not attach the relevant insurance policy documents, which might include a choice of law provision. But both parties have argued the case premised on Illinois law, and "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid–Valley Inc.*, 942 F.2d 425, 427 (7th Cir.1991); *see also Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir.1995) ("[C]hoice of law, not being jurisdictional, is normally . . . waivable." (citations omitted)). Because both parties assume that Illinois law governs this dispute, the Court applies Illinois law.

the Policy is therefore a STOLI contract and void, and that dismissal of the claim for declaratory relief is appropriate under Rule 12(b)(1) and Rule 12(b)(6).

### 1.

First, Allianz argues that under Federal Rule of Civil Procedure 12(b)(1), LincolnWay lacks standing to seek a declaration as to the validity of the Policy, because the Policy is void. Def.'s Br. at 11. Allianz's Rule 12(b)(1) argument puts the cart before the horse; the Court must first declare whether the policy is void, and if void, the Court can then consider whether LincolnWay has standing to pursue other forms of relief. Put another way, even assuming the Policy is void on the face of the amended complaint (an argument that is considered and rejected below), Rule 12(b)(1) would not the proper vehicle for dismissing this claim. It is true that if a contract is declared illegal at its inception, then courts will leave the parties where they are. *Gamboa v. Alvarado*, 941 N.E.2d 1012, 1016–17 (Ill. App. Ct. 2011) ("[G]enerally, parties to a void contract will be left where they have placed themselves with no recovery of the money paid for illegal services." (quotation omitted)). But that principle does not prevent the Court from declaring that a contract is or is not void. Allianz (rather than LincolnWay) could easily be the plaintiff in this suit, seeking a declaration that the policy is a STOLI contract and therefore void. Courts regularly consider (and sometimes grant) relief sought by the insurers in such cases. *See, e.g., Penn Mut. Life Ins. v. Greatbanc Trust Co.*, 887 F. Supp. 2d 822, 827 (N.D. Ill. 2012) (declaring a policy void on the plaintiff-insurer's motion for summary judgment). It makes no sense that Allianz could seek a declaration that the Policy is void, but that LincolnWay cannot

seek a declaration that the Policy is valid. Both sides have "standing" to seek the declaration on validity or invalidity. For those reasons, Allianz's argument under Rule 12(b)(1) is rejected; LincolnWay has standing to seek declaratory relief.

**2.**

Next, Allianz moves to dismiss LincolnWay's claim for declaratory relief under Rule 12(b)(6), arguing that on the face of the complaint the Policy is a STOLI contract and therefore unenforceable. Def.'s Br. at 11. Alllianz is effectively seeking its own declaration that the policy is void, because dismissal of LincolnWay's claim for declaratory relief would likely entitle Allianz to treat the policy as though the Court had declared it unenforceable. The question therefore is: Does LincolnWay's amended complaint (taking all the factual allegations as true and drawing reasonable inferences in LincolnWay's favor) conclusively establish that the Policy on the life of Raymond Veselik was a STOLI contract at the time it was procured, such that the Policy was void at its inception?

According to the amended complaint, Scott Veselik applied for the Policy on the life of Raymond Veselik on January 18, 2008. Am. Compl. ¶ 12. As explained above, the Policy would be a STOLI contract if the procurer did not have an "insurable interest" on the life of Raymond Veselik. *Bajwa*, 776 N.E.2d at 617; *see also Ohio Nat'l Life Assurance Corp. v. Davis*, 2011 WL 2680500, at *4 (N.D. Ill. July 6, 2011) (inquiring whether plaintiff "has sufficiently alleged that there was a lack of insurable interest *at the time*" the policy was procured (emphasis added)). The meaning of "an insurable interest is an interest in having the life [of the insured] continue." *Gray v. N. Am. Mut.*

9

*Union*, 249 Ill. App. 74, 84 (Ill. App. Ct. 1928). Whether Scott Veselik had an "insurable interest" in the life of his father is a question of fact that cannot be resolved on a motion to dismiss. *See Charbonnier v. Chicago Nat'l Life Ins.*, 266 Ill App. 412, 421 (Ill. App. Ct. 1932) ("[I]t is a question of fact as to whether a person has an insurable interest in the life of another."). In other words, assuming Scott Veselik was the one who procured the policy, the Court is not in a position to declare the policy void and dismiss the complaint. *See Colgrove v. Lowe,* 175 N.E. 569, 572 (Ill. 1931) ("[A] parent has an insurable interest in the life of his child, and a child in the life of his parent[.]"); *Bowman v. Zenith Life Ins.*, 67 Ill. App. 3d 393, 393–95 (Ill. App. Ct. 1978) (upholding a trial court's finding that policy holder had an insurable interest in the life of his son).

But was Scott Veselik truly the one who procured the Policy? Allianz argues that, even taking all of the allegations of the amended complaint as true, it was *Passero* who had complete control over the Policy from the beginning, and Passero had no insurable interest in the life of the insured, Raymond Veselik. Def.'s Br. at 9-11. Allianz contends that the initial purchase of the Policy by Scott Veselik and the listing of Scott's mother as beneficiary were a mere smokescreen, and that the ultimate intent was always to sell the Policy to Passero. *Id.* Although there are good reasons to doubt the plausibility of the amended complaint's description of who really procured the Poilcy,[3] discovery is needed to flesh out whether there really was an agreement

---

[3] For example, the amended complaint alleges that as collateral for the loan made to Passero, LincolnWay accepted Passero's assignment of the Policy, even though LincolnWay supposedly knew that Passero did not have control over the Policy at the time. Am. Compl. ¶ 20. Why would LincolnWay accept the Policy as collateral if the debtor (Passero) had no control

10

between Scott Veselik and Passero when the Policy was procured. As it stands, Allianz's theory is just that—a theory. For example, in its brief, Allianz claims that "Scott Veselik never was obligated to repay the loan [from Passero]," but Allianz provides no citation to the amended complaint for this fact. Def.'s Br. at 9. The nature of the agreement between Passero and Scott Veselik is crucial to the validity of the Policy, and at this stage of the case, the Court cannot conclusively determine what that agreement (if any) was. The sequence of events in this case is indeed suspicious, and some focused discovery (for example, the depositions of Passero and Scott Veselik) may provide a basis for an earlier-than-usual summary judgment motion by Allianz. But at this point, LincolnWay has alleged that Scott Veselik procured the policy on the life of his father and named his mother as the beneficiary. Am. Compl. ¶ 12. Taking all facts and reasonable inferences in LincolnWay's favor, dismissal at this stage is not appropriate. *Iqbal*, 556 U.S. at 696.

**B.**

When LincolnWay amended its complaint in this case, it added an alternative claim for relief (in case the Policy is deemed to be void) seeking restitution of the premiums it has paid to Allianz based on a theory of unjust enrichment. Am. Compl. ¶¶ 49–60. Allianz moves to dismiss claim this claim as well, arguing: (1) because the Policy is void, the Court must leave the parties where it finds them; and (2)

---

over it? Allianz can explore that question during discovery.

LincolnWay has failed to plead the elements of an unjust enrichment claim. *See* Def.'s Br. at 1–215.

1.

Allianz's first argument is rejected, because, as explained above, the Court cannot now rule that the policy is void. But even if the Policy were declared void, LincolnWay might still be entitled to restitution, and so the claim cannot be dismissed. "Unjust enrichment is an equitable claim that arises when a defendant voluntarily accepts a benefit that would be inequitable for it to retain without paying for it," and it is not barred by a ruling that a contract between the parties is void. *Penn Mut. Life Ins.*, 887 F. Supp. 2d at 832 . An unjust enrichment claim's remedy is restitution, which is measured by the inequitable gain to the defendant, not by the loss to the plaintiff. *Raintree Homes, Inc. v. Vill. of Long Grove,* 807 N.E.2d 439, 445 (2004). Therefore, the fact that the Policy here might be declared void does not preclude LincolnWay's unjust enrichment claim, because that claim is not based on the existence of a contract. *See Karimi*, 952 N.E.2d at 1284. In fact, "where there is a specific contract that governs the relationship between the parties, the doctrine of unjust enrichment has no application." *Guinn v. Hoskins Chevrolet*, 361 Il. App. 3d 575, N.E.2d 681 604 (Ill. App. Ct. 2005) (citations omitted). That is likely why LincolnWay pleaded the unjust enrichment claim in the *alternative*: if the Policy is declared valid, LincolnWay cannot pursue restitution; if declared invalid, then the restitution claim is the remaining theory.

Allianz relies on *Penn Mutual Life Ins. Co. v. GreatBanc Trust Co. (GreatBanc)*, 2012 WL 2074789 (N.D. Ill. June 8, 2012), in support of its argument, Def.'s Br. at 12-13, but *GreatBanc* did not address the viability of an unjust enrichment claim. In *GreatBanc,* the Court considered whether the defendant would be entitled to *rescission*[4] if the policy at issue was declared void. *Id.* at *4. As explained in that case, "rescission presumes the existence of an otherwise valid and enforceable contract," and therefore if the policy in *GreatBanc* were declared void at its inception, there would be no basis for a rescission claim. *Id.* (quotations omitted). But that principle is not applicable to this case, which involves a claim for restitution, not rescission. Similarly, in *Penn Mutual*, the Court declined to order the return of premiums on the basis of rescission (after the Court declared the policy at issue void), 887 F. Supp. 2d at 831, but allowed an unjust enrichment claim to proceed to discovery, *id.* at 832. As already explained, in this case LincolnWay's claim for return of the premiums is based on an equitable theory that does not depend on the existence of a contract (indeed it is only viable if there is found to be *no* contract between the parties). If the Policy is declared void at some later point in this case, LincolnWay will have the chance to prove that it would be inequitable for Allianz to retain the premiums. The Court will not prejudge this issue given the disputed facts and the potential for further discovery on the equities.

---

[4] "Rescission is the cancelling of a contract so as to restore the parties to their initial status. . . . [A] party seeking rescission must restore the other party to the status quo existing at the time the contract was made." *Ill. State Bar Ass'n Mut. Ins. Co.*, 821 N.E.2d at 713 (quotations and citations omitted).

**2.**

Finally, Allianz's argument that LincolnWay failed to adequately allege the elements of an unjust enrichment claim is also rejected. "To state a cause of action for unjust enrichment, a plaintiff must allege the defendant unjustly retained a benefit to the plaintiff's detriment, and the defendant's retention violated the fundamental principles of justice, equity, and good conscience." *Galvan v. Nw. Mem'l Hosp.*, 888 N.E.2d 529, 541 (Ill. App. Ct. 2008). Allianz argues that the amended complaint never alleges that Allianz was aware of the STOLI scheme, but that it does allege that LincolnWay "was aware of the circumstances revealing a STOLI scheme." Def.'s Br. at 14. Therefore, Allianz argues, LincolnWay is the one with unclean hands and it would not be inequitable for Allianz to retain the premium. *Id.* For the reasons discussed above, however, at this time the Court cannot conclusively determine the circumstances under which the Policy was procured, or the extent of LincolnWay's knowledge of those circumstances. LincolnWay alleges that it was not aware that the Policy was in any way inappropriate, Am. Compl. ¶ 51, and that Allianz continued accepting premium payments even after it concluded that the Policy was void, *id.* ¶ 56. That is enough to state a claim for unjust enrichment. If discovery shows LincolnWay had "unclean hands" with respect to the procurement of this Policy, equitable relief would likely be precluded. *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 822 (7th Cir. 2010). But, at the pleadings stage, the Court will not jump to that conclusion. Allianz's motion to dismiss LincolnWay's unjust enrichment claim is denied.

## IV. Conclusion

For the reasons stated above, Allianz's motion to dismiss [R. 27] is denied. At the upcoming status hearing, the parties should be prepared to discuss a schedule for discovery moving forward, including whether an initial category of discovery focused specifically on whether the Policy was STOLI would be appropriate in light of this opinion. Just as importantly, the parties must explore settlement possibilities, and must consider whether a settlement conference is appropriate before incurring the costs of continued litigation.

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 17, 2013

15