UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINCOLNWAY COMMUNITY BANK, | ) |
| Plaintiff, | ) No. 11 C 5907 |
| v. | ) |
| | ) Judge Edmond E. Chang |
| ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Allianz Life Insurance Company moves to amend its Answer to assert a counterclaim for civil conspiracy against Plaintiff LincolnWay Community Bank.[1] LincolnWay originally filed suit seeking a declaration that a life insurance policy it owned on Raymond Veselik was valid. In the alternative, LincolnWay asserted an unjust enrichment claim, requesting the return of policy premiums it paid to Allianz in the event that the Veselik Policy was found invalid. In November 2015, the Court granted Allianz's motion for partial summary judgment, holding that a reasonable factfinder could conclude only that the Raymond Veselik Policy was invalid because it was a stranger-originated life insurance policy procured by a party who had no interest in the continuation of Raymond Veselik's life. Still pending is LincolnWay's unjust enrichment claim, which Allianz did not raise in its motion for summary judgment. On January 27, 2016, two months after the

---

[1]The Court has subject matter jurisdiction over this case based on diversity jurisdiction under 28 U.S.C. § 1332.

summary judgment Opinion and fourteen months after the close of discovery, Allianz moved for leave to amend its Answer to add a counterclaim of civil conspiracy and to recover litigation costs, attorneys' fees, and expenses incurred in maintaining the Veselik Policy. For the reasons explained below, Allianz's motion is denied.

## I. Background

The relevant facts are set out in the summary judgment Opinion issued on November 17, 2015. R. 114, 11/17/15 Opinion;[2] *Lincolnway Cmty. Bank v. Allianz Life Ins. Co. of N. Am.*, 2015 WL 7251931 (N.D. Ill. Nov. 17, 2015). Because most of the underlying facts are relevant to Allianz's motion for leave to amend, the Court will repeat them below.

### A. The Veselik Policy

Scott Veselik was an independent insurance agent who sold life insurance for Allianz, among other companies. DSOF ¶ 3; R. 80-5, Exh. B, S. Veselik Dep. 20:3-26:22. William Passero was a real estate developer and Scott Veselik's neighbor, officemate, and social acquaintance. DSOF ¶ 3; R. 80-4; Exh. A, Passero Dep. 35:9-56:5. In the mid-2000s, Scott and Passero went into the life insurance business together as premium financiers, funding the initial premiums of insured parties.

---

[2]Citations to the docket are noted as "R." followed by the entry number. Citations to the parties' summary judgment Local Rule 56.1 Statements of Fact are "DSOF" (for Allianz's Statement of Facts) [R. 79-1 (sealed), R. 80-2 (public)]; "PSOF" (for LincolnWay's Statement of Additional Facts) [R. 95 (sealed), R. 97 (public)]; "Pl.'s Resp. DSOF" (for LincolnWay's Response to Allianz's Statement of Facts) [R. 95 (sealed), R. 97 (public)]; "Def.'s Resp. PSOF" (for Allianz's Response to LincolnWay's Statement of Additional Facts) [R. 104-1 (sealed), R. 105-1 (public)]; and "Def.'s Reply to Pl.'s Resp. DSOF" (for Allianz's Reply to LincolnWay's Response to Allianz's Statement of Facts) [R. 104-2 (sealed), R. 105-2 (public)].

DSOF ¶ 4; S. Veselik Dep. 41:15-50:18; Passero Dep. 57:15-59:10. Scott and Passero themselves turned to a source for funding this business; in 2006, they met with George Alexenko, the Chief Credit Officer and Executive Vice President of LincolnWay Community Bank, to provide an overview on premium financing and the secondary life insurance market. DSOF ¶ 23; R. 80-6, Exh. C., Alexenko Dep. 146:2-149:18. During that meeting, Passero proposed using LincolnWay-funded loans to pay premiums on life insurance policies for a 26-month period. DSOF ¶ 24; Alexenko Dep. 176:4-177:16. This was the length of a policy's contestability period—the amount of time an insurance company generally has to challenge the policy's validity. DSOF ¶¶ 29-30; Alexenko Dep. 146:15-147:21. After the 26-month period, there were three "exit options" for the financier: (1) the insured could buy the policy back from the financier by repaying the loan; (2) the financier could sell the policy on the secondary market to recoup the premiums paid; or (3) the financier becomes the owner of the policy and either lets it lapse or continues paying the premiums. DSOF ¶ 25; S. Veselik Dep. 64:22-65:10, 90:21-91:11. Scott and Passero told Alexenko that they planned to "fill out applications [for potential insured parties] at insurance companies that didn't try to weed out policies that would ultimately be sold." DSOF ¶ 31; Alexenko Dep. 176:18-177:16. In particular, Allianz was one of "the last [insurance companies] to change [the application] to ask about where the premiums came from, was it financed, were there any talks of life settlements, and was someone else helping you provide the … funds for the policy." R. 95-3, Exh. A., S. Veselik Dep. (LincolnWay Excerpt – Sealed) 95:4-17. After Alexenko approved

3

the plan, Passero and Scott coordinated the financing for at least eleven life insurance policies, including the Veselik Policy, using loans from LincolnWay. DSOF ¶ 47; R. 79-40, Exh. MM, Passero Financial Statement at LW000730; R. 79-4, S. Veselik Dep. (Sealed) 68:5-83:16.

In early 2008, Passero, Scott, and Alexenko discussed the specific loan to fund Raymond Veselik's policy. DSOF ¶ 75 (citing R. 1 at ¶¶ 8-9). Scott was Raymond Veselik's son. S. Veselik Dep. 70:18-19. But Passero had no insurable interest in Raymond's life; the two were not related, had never lived in the same house, and had never owed each other any money. DSOF ¶ 80; Passero Dep. 208:2-209:18. In January 2008, Scott applied for an Allianz life insurance policy (the Policy or Veselik Policy) on the life of his father, Raymond Veselik, and listed his mother, Judith Veselik, as the beneficiary. DSOF ¶ 53; R. 79-15, Exh. N, Veselik Policy at LW000158-165. On March 14, 2008, LincolnWay sent a letter to Passero with loan documents and a check for $210,900 to fund the Veselik Policy premium. DSOF ¶ 63; R. 79-29, Exh. BB, 3/14/08 Letter. Shortly afterward, Scott wrote a personal check to Allianz for $210,900; Scott knew that the money from Passero and LincolnWay would be available before his check to Allianz cleared. DSOF ¶ 63; S. Veselik Dep. 112:1-12, 166:11-16. On March 17, 2008, Passero signed a document called "Assignment of Life Insurance Policy as Collateral" for the LincolnWay loan. DSOF ¶¶ 67-68; R. 79-9, Exh. H, 3/17/08 Assignment. This document stated that the Veselik Policy was "to be held as collateral security for any and all present and future liabilities of the above referenced Borrower, or any of them, to the Assignee,

4

of every nature and kind, whether now existing or that may hereafter arise ... ." 3/17/08 Assignment at LW000007. LincolnWay argues that this was not a formal assignment of the collateral but rather the rote completion of an automatically generated form. Alexenko Dep. 178:2-16; Pl.'s Resp. DSOF ¶¶ 67-68. The next day, on March 18, 2008, Allianz formally issued policy number ****8106, the Veselik Policy. DSOF ¶ 65; Veselik Policy at LW000148. On December 29, 2008, just nine months after the Policy's issuance, Scott filed a request with Allianz to transfer the Policy to Passero, DSOF ¶ 72; R. 79-56, Exh. 9, 12/29/08 Request, a change that Allianz confirmed on the following day, Pl.'s Resp. to DSOF ¶ 72; R. 95-8, Exh. F, 12/30/08 Letter. Passero later transferred the Veselik Policy to LincolnWay on August 31, 2010. DSOF ¶ 72; R. 79-14, Exh. M, 8/31/10 Letter.

### B. Procedural Posture

LincolnWay brought this action on August 25, 2011, seeking (1) a declaratory judgment that the Veselik Policy was valid; and (2) restitution of the premiums paid to Allianz in the event that the Policy was found invalid. R. 1, Compl.; R. 20, Am. Compl. After the Court denied Allianz's motion to dismiss, R. 38, Allianz filed its Answer, asserting several affirmative defenses—but no counterclaims, R. 40, Answer. Its eighteenth affirmative defense was labeled "setoff or offset," and stated in relevant part that "[i]f Plaintiff prevails on its claim of unjust enrichment, Allianz Life is entitled to an offset, or setoff, in the amount of the expenses it has incurred in the origination, issuance and maintenance of the Policy." *Id.* at 32-33.

5

After discovery closed in November 2014, R. 61-63, Allianz moved for partial summary judgment on LincolnWay's validity claim, R. 79. The Court granted Allianz's motion, holding that there was no genuine issue of fact: the Veselik Policy was procured by Passero, who had no insurable interest in Raymond Veselik's life, and was thus invalid under Illinois common law. 11/17/15 Opinion. That left only LincolnWay's second claim for unjust enrichment. *Id.* Allianz now moves for leave to amend its Answer to assert a counterclaim of civil conspiracy against LincolnWay and to recover the costs and expenses in issuing and maintaining the Veselik Policy, as well as attorneys' fees and litigation costs. R. 120, Def.'s Mot. Amend.

### III. Legal Standard

After a party has amended its pleadings once as a matter of right, district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend is not granted automatically. *See Airborne Beepers & Video Inc. v. AT&T Mobility LLC*, 499 F.3d 633, 666 (7th Cir. 2007). "[District] courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 871-72 (7th Cir. 2011) (citation and quotations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962). Undue prejudice may exist when "the amendment would bring a new claim, and the amendment would require new discovery." *Amendola v. Bayer*, 907 F.2d 760, 764 (7th Cir. 1990); *see also Cement Masons' Pension Fund, Local 502 v. Clements*, 1993 WL 398643, at *2 (N.D. Ill. Oct.

6

6, 1993) (amendment would be unduly prejudicial when "[it] results in the incorporation of a new claim, the addition of a new party or expensive and time consuming discovery" (citation and quotations omitted)). And while delay alone usually does not warrant denying leave to amend, the "longer the delay, the greater the presumption against granting leave to amend." *Johnson*, 641 F.3d at 872 (citation and quotations omitted).

### IV. Analysis

Allianz argues that adding a counterclaim at this stage will not unduly prejudice LincolnWay. In Allianz's view, the amendment adds no new factual issues, so supposedly no more discovery is necessary; relatedly, Allianz contends that this Court has already made the necessary factual findings on the proposed civil conspiracy counterclaim. Def.'s Mot. Amend at 2-5. On timing, Allianz says that the motion is timely because an October 2015 Seventh Circuit opinion "[was] the first time that any federal [or Illinois] court has sustained a claim for civil conspiracy against a STOLI conspirator on behalf of an insurer" and allowed the insurer to recover damages. R. 128, Def.'s Reply at 2. None of these arguments, however, are convincing: adding the counterclaim at this late stage would in fact unduly prejudice LincolnWay.

The amendment would be unduly prejudicial because more discovery would be needed on the claim of civil conspiracy, which really is a claim for *fraud*. In Illinois, civil conspiracy is "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose

7

by unlawful means." *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (Ill. 1999) (citation and quotations omitted). This means that "to state a claim for civil conspiracy, a plaintiff must allege an agreement and a tortious act committed in furtherance of that agreement." *Id.* (citation omitted). Allianz suggests that the relevant underlying tort is fraud.[3] To Allianz's way of thinking, the Court already held, in deciding the summary judgment motion, that the Veselik Policy was a STOLI and invalid, and the Court supposedly has already made all of the factual findings necessary to establish a conspiracy for fraud.

But this is not so. The parties did not litigate an outright fraud theory as part of LincolnWay's declaratory judgment claim. To establish fraud, Allianz would have had to demonstrate that a party

> (1) [made] a false statement of material fact; (2) [that] the party making the statement knew or believed it to be untrue; (3) [that] the party to whom the statement was made had a right to rely on the statement; (4) [that] the party to whom the statement was made did rely on the statement; (5) [that] the statement was made for the purpose of inducing the other party to act; and (6) [that] the reliance by the person to whom the statement was made led to that person's injury.

*Illinois State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468, 481-82 (Ill. App. Ct. 2012) (citations and quotations omitted).[4] But these elements of fraud were *not* a central part of the summary judgment motion. A fraud claim would have focused on

---

[3]Although Allianz never explicitly articulates what underlying tort will form the basis of its civil conspiracy claim, it implies that it would pursue a fraud claim. LincolnWay framed the proposed counterclaim as "an agreement and conspiracy … to defraud Allianz," R. 127, Pl.'s Resp. at 8, a characterization that Allianz did not dispute.

[4]For a civil conspiracy claim, Allianz would also have to show that LincolnWay "knowingly and voluntarily participate[d]" in this fraud scheme by "plan[ing], assist[ing], or encourag[ing] the act." *McClure*, 720 N.E.2d at 258 (citations and quotations omitted).

8

the communications between the alleged fraudster or fraudsters (Passero, Scott Veselik, and/or Alexenko) and Allianz; the main issues would have been what the alleged fraudsters told Allianz, and whether Allianz relied on this communication in deciding to issue the Policy. In contrast, the dispute over whether the Veselik Policy was a STOLI focused on whether someone other than the "insured owned and controlled the policy before attempting to sell it," meaning the "insureds were the defendants' puppets and the policies were bets by strangers on the insureds' longevity." *Ohio Nat. Life Assur. Corp. v. Davis*, 803 F.3d 904, 909 (7th Cir. 2015); *see* 11/17/15 Opinion at 6-9. So unlike fraud, the STOLI inquiry centered on whether "Passero procure[d] the Policy as an investment vehicle, using Raymond Veselik as a straw man," which in turn concentrated on the understandings between Passero, Scott Veselik, Raymond Veselik, and Alexenko at the Policy's inception. *See* 11/17/15 Opinion at 10 (explaining that "the Court must … consider the nature of the understanding between Passero and Scott at the Policy's inception, such as who had control over the Policy, whether there was a pre-existing agreement to transfer the Policy to Passero, and whether Scott intended to repay the premiums"); *id.* at 16-17 ("[T]he key question is the understanding between Passero and Alexenko at the policy's inception."). But the communications with Allianz and Allianz's reaction to these communications—facts that would be crucial to a fraud claim—were not critical or dispositive on summary judgment as to the STOLI claim. *See id.* To be sure, there might be some overlap in the fraud and STOLI analyses, such as the state of mind of Passero, Veselik, and Alexenko. But

9

the bottom line is that in litigating Allianz's motion for summary judgment, the parties did not focus on or ask the Court to consider whether there were any material misrepresentations, whether Allianz knew about the statements, or whether Allianz relied on any misrepresentations. *See Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 774 F. Supp. 2d 674, 679-80 (D. Del. 2011) (the court's prior conclusion that a policy was a STOLI because "the facts … clearly demonstrate[d] a scheme or plan to evade the law against wagering contracts" did *not* include "any finding of fraudulent activity" (quotations omitted)). In fact, the Court actually pointed out that there was *no* misrepresentation about premium financing in this case because there was no direct question on Allianz's application about financing. 11/17/15 Opinion at 3 (Allianz was one of "the last [insurance companies] to change [the application] to ask about where the premiums came from, was it financed, were there any talks of life settlements, and was someone else helping you provide the … funds for the policy"). There might have been misstatements in response to other application questions about risk or financing, but these were not facts that were teased out on summary judgment.[5]

Similarly, because the elements of fraud are different from those needed to prove an invalid STOLI, LincolnWay did not get a chance to fully develop the record on a fraud-conspiracy claim during discovery, particularly on the communications made to Allianz and Allianz's understanding of and reliance on those

---

[5]Nor was the Court asked to consider whether there was any fiduciary relationship or other duty to speak that would have given rise to fraud by omission. *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 630 N.E.2d 940, 943 (Ill. App. Ct. 1994) ("The intentional omission or concealment of a material fact may be the basis of a fraud action if a special or fiduciary relationship exists which gives rise to the duty to speak." (citation omitted)).

communications. R. 127, Pl.'s Resp. at 9-10. Allianz argues there has already been "exhaustive" discovery on this issue, noting that LincolnWay has repeatedly emphasized that Allianz's knowledge was important to its unjust enrichment claim and Allianz's affirmative defense of a setoff. Def.'s Reply at 7-9. True, defending against a fraud claim has some similarities (but some differences too) to pursuing an unjust enrichment claim, the latter of which involves "a defendant [who] has unjustly retained a benefit to the plaintiff's detriment, and [the] defendant's retention of the benefit[,] violat[ing] the fundamental principles of justice, equity, and good conscience." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (citation and quotations omitted). But there is an important difference: the two theories—pursuing an unjust enrichment claim and defending against fraud— would result in dramatic differences in liability exposure. Throughout this entire litigation, Allianz never put LincolnWay on notice that LincolnWay could be on the hook for *affirmative damages* to Allianz in the form of policy fees, litigation expenses, or attorneys' fees. LincolnWay believed that at worst, if the Court held that the Veselik Policy was a STOLI, it might have lost its unjust enrichment claim and failed to recover its premiums. Or, it might have won its unjust enrichment claim but its recovery could have been reduced by Allianz's expenses related to maintaining the Policy (if Allianz won on its affirmative defense). Neither of these options encompassed *paying Allianz* for fees and expenses related to the Policy *and* the underlying litigation.

As a result, LincolnWay would have adopted a different discovery strategy had it been defending against a counterclaim of civil conspiracy and facing the prospect of affirmative damages from the outset. For example, LincolnWay asserts that it would have more aggressively pursued discovery about other Allianz policies (in addition to the Veselik Policy) involving Scott Veselik, Passero, and LincolnWay funds. Pl.'s Resp. at 9-10. (Remember, there were at least eleven of these policies.) These records would have been relevant because they "are sources of information as to Allianz's interactions with its agent, Scott Veselik, and its insureds and its awareness of facts that would reveal the alleged conspiracy." *Id.* at 10. In addition, LincolnWay's strategy was informed by the theory of this case, which from the beginning involved a *single* policy—the Veselik Policy. But had LincolnWay been facing a claim of civil conspiracy to defraud Allianz, LincolnWay would also have wanted more information about the other policies because it would have been exposed to damages related not just to the Veselik Policy, but for *all of them*. Thus, the addition of the counterclaim at this late stage would unduly prejudice LincolnWay because it would require reopening discovery.

In response, Allianz argues that it could not have brought a civil conspiracy counterclaim earlier because the Seventh Circuit's October 2015 *Ohio National* case "[was] the first time that any federal [or Illinois] court has sustained a claim for civil conspiracy against a STOLI conspirator on behalf of an insurer" and for the first time held that a procurer of a STOLI was liable to the insurer for damages. Def.'s Reply at 2 (citing 803 F.3d at 910-11). There are several problems with this

12

argument. First, the conclusion itself is dubious because the *district court* in *Ohio National* held—more than a year earlier—that the defendants conspired to fraudulently procure life insurance policies without an insurable interest. *Ohio Nat'l Life Assurance Corp. v. Davis*, 13 F. Supp. 3d 876, 887 (N.D. Ill. 2014). Federal courts outside this circuit have also entertained claims for civil conspiracy with regards to procuring a STOLI. *See, e.g.*, *PHL Variable Ins. Co. v. Abrams*, 2012 WL 10686, at *6 (S.D. Cal. Jan. 3, 2012) (denying a motion to dismiss a civil conspiracy claim based on fraudulent misrepresentations made on an insurance application). Second, there are several cases alleging that a STOLI was procured by fraud, and Allianz cannot explain why it did not know at the beginning of this litigation, or sometime during the pendency of discovery, that it could have counterclaimed for fraud. *See, e.g.*, *Ohio Nat'l*, 13 F. Supp. 3d at 887 (defendant committed fraud by making misrepresentations on policy applications); *PHL Variable Ins. Co. v. Robert Gelb Irrevocable Trust*, 2010 WL 4363377, at *1 (N.D. Ill. Oct. 27, 2010) (defendant allegedly committed fraud when it "did not accurately state its reason for obtaining the policy at issue" and "procured the policy in furtherance of a stranger originated life insurance … scheme"). Finally, even assuming that *Ohio National* was the first Circuit decision on the issue, nothing stopped Allianz from asserting—as Ohio National did—that there should be affirmative recovery of damages and attorneys' fees arising from a civil conspiracy to procure a STOLI. Put another way, Allianz could have made the argument, just as Ohio National did. In sum, the timing of *Ohio National* does not excuse Allianz's delay in filing a counterclaim for fraud or

civil conspiracy. And because its counterclaim raises new legal elements as well as new theories of damages that would have affected LincolnWay's litigation strategy and would require additional discovery, adding the counterclaim at this late stage would unduly prejudice LincolnWay.

## IV. Conclusion

For the reasons discussed above, Allianz's motion for leave to amend its Answer, R. 120, is denied.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 1, 2016